IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRENT HOLDRIDGE, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. _____ |
| TRICORBRAUN, INC. | § | 3-13CV1202-L |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND
## REQUEST FOR EXPEDITED DECLARATORY JUDGMENT

Plaintiff Brent Holdridge ("Plaintiff" or "Holdridge") files his *Original Complaint and Request for Expedited Declaratory Judgment* against Defendant TricorBraun, Inc. ("Defendant" or "TricorBraun") and respectfully shows:

### I. PARTIES

1. Plaintiff Holdridge is an individual residing at 190 Roma Drive, Lewisville, Texas 75067.

2. Defendant TricorBraun is a Missouri corporation with its principal place of business at 10330 Old Olive Street Road, St. Louis, Missouri 63141-5922. Defendant TricorBraun may be served through its registered agent, CT Corporation System, at 350 N. Saint Paul, Suite 2900, Dallas, Texas 75201-4234.[1]

### II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction based upon 28 U.S.C. § 1332, as this action is between citizens of different states—Holdridge is a citizen of Texas and TricorBraun is

---

[1] References to "TricorBraun" include Kranson Industries, Inc. ("Kranson"). Kranson was registered with Texas's Secretary of State, but Kranson changed its name to TricorBraun, Inc. on November 18, 2010.

a citizen of Missouri. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4. The Court has general and specific personal jurisdiction over TricorBraun. The Court has general jurisdiction over TricorBraun because it purposefully availed itself to the rights and benefits of doing business in Texas, maintains an office in Texas, and its business activities in Texas are, and have been, continuous and systematic. The Court has specific jurisdiction over TricorBraun because Holdridge's claims arise from and/or are directly related to TricorBraun's contacts with Texas, as described more fully below regarding venue.

5. Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred and are occurring in the Northern District. Specifically, Holdridge met with the former President of Ryco Packaging Corporation ("Ryco") at Ryco's office in the Northern District prior to signing the employment agreement (the "Agreement") that is, in part, the basis of this lawsuit. Holdridge was reimbursed moving expenses to relocate to the Northern District, where he continued living without interruption. The parties later met in the Northern District to discuss amending the Agreement. The Agreement was formally amended in 2006 (the "Amendment") and the execution of the Amendment took place in the Northern District. When TricorBraun acquired Ryco in 2007,[2] the meetings and discussions with Holdridge regarding the acquisition, transition, and Holdridge's resulting employment with TricorBraun took place in the Northern District. Before and for some time after TricorBraun's acquisition of Ryco, Holdridge managed the Dallas branch office and performed his duties under the Agreement and Amendment in the Northern District.

6. Moreover, the Northern District is the most convenient and efficient District for

---

[2] Kranson Industries, Inc. ("Kranson") purchased Ryco. Kranson changed its name to TricorBraun, Inc. on November 18, 2010.

suit. Holdridge and other potentially key fact witnesses reside within this Court's jurisdiction and subpoena range. The purported restrictions on Holdridge's post-termination employment are primarily within the Northern District. Holdridge's counsel is in the Northern District. Although TricorBraun's principal place of business in St. Louis, Missouri, it is registered with Texas's Secretary of State and maintains an office in Lewisville, Texas, which is near the Northern District. There is no parallel suit pending between the parties, and there are no prior state court judgments or decrees involving the same or similar parties. This Court is the proper Court for this lawsuit.

### III. FACTS

**A.   HOLDRIDGE'S EMPLOYMENT AGREEMENT AND AMENDMENT.**

7.   In 2004, Ryco hired Holdridge as the District Manager of Ryco's Dallas branch office, which also included responsibility for the San Antonio branch office. Ryco and Holdridge executed the Agreement, which described his job duties and compensation.

8.   Section 2.1 of the Agreement provides for a base salary of $100,000, and an additional guaranteed annual bonus of $50,000 that was paid on a pro-rated basis through December 31, 2005. Sections 2.2, 2.3, and 2.4 provide for a car allowance, fringe benefits, and a signing bonus, respectively.

9.   Section 2.5 contains Holdridge's bonus plan, which provided for a bonus at the conclusion of each year, and only after Ryco's accountants made the appropriate determinations and allocations of Ryco's financial statements:

> Employee shall be entitled to a bonus of ten percent (10%) of the pre-tax earnings allocated to the Dallas District Office, which earnings are in excess of Two Hundred Thousand Dollars ($200,000.00), and fifteen percent (15%) of earnings in excess of One Million Dollars ($1,000,000.00). Any amounts owed to Employee for the bonus/commission under Section 2.1 above shall be subtracted from any amounts owed under Section 2.5. The

pre-tax earnings and the allocation shall be made by Ryco's usual and customary accounting firm, and said determinations shall be conclusive and binding. Said bonus, if any, shall be paid by Ryco at such time or times as Ryco, in its discretion, shall determine, and shall commence no less than thirty (30) days after Ryco's accountants have made the determinations and allocations as aforesaid.

10. The Agreement also contains restrictions regarding the use of confidential information (Article III), and post-employment restrictive covenants (the "Restrictive Provisions), including:

> 4.1 Employee covenants that during his employment with Ryco, and for a period of twenty-four (24) months from and after termination of his employment, and regardless of any reason for said termination, he shall not, without the prior written consent of Ryco, in any manner, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner in the ownership, management, operation or control of any business engaged in the wholesale distribution of packaging or packaging related products or services that competes with Ryco within a radius of two hundred (200) miles from the Dallas District Office located at 2100 Luna Road, Suite 100, Carrollton, Texas 75006, or wherever said District Office is situated during the course of Employee's employment and immediately prior to his termination, and for which competitive business Employee would have any responsibility or involvement. For purposes of this agreement, "indirectly" shall mean as a shareholder, partner, member, employee or agent of any corporation, partnership, limited liability company or other business entity, and shall include rendering of services to any such entity regardless of ownership by Employee, or to any such entity owned, managed, operated or controlled by Employee=s [sic] spouse or other family member.

> 4.2 Employee covenants that, during his employment with Ryco, and for a period of twenty-four (24) months from and after termination of his employment, and regardless of any reason for said termination, he shall not, directly or indirectly, contact or solicit or accept the trade or patronage of any of Ryco's customers for himself or for any other person or entity with respect to packaging or packaging-related products or services. The term "customers" shall mean all persons or organizations with whom Ryco has done business and with whom Employee has had contact on behalf of Ryco or on whose accounts he has worked, or about whom he possessed confidential information, within the twenty-four (24) month period preceding the date of the termination of his employment, and which customers are located within a radius of two hundred (200) miles from the Dallas District Office located at 2100 Luna Road, Suite 100, Carrollton,

Texas 75006, or wherever said District Office is situated during the course of Employee's employment and immediately prior to his termination.

11. Other relevant provisions include section 7.1 of the Agreement, which states that "[t]his Agreement may not be altered, amended, revoked or terminated, except by an instrument in writing executed by the parties hereto." Section 7.2 of the Agreement provides that "[t]his Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, personal representatives, successors, and assigns."

12. During the next two years, Holdridge was paid pursuant to the Agreement. Holdridge did not receive a bonus because the office Ryco did not exceed the required thresholds as provided in the Agreement.

### B. THE PARTIES AMEND THE AGREEMENT.

13. In June 2006, Holdridge and Ryco negotiated and executed the Amendment. The Amendment (1) modified the Agreement's Section 2.1 by increasing Holdridge's base salary and (2) and added commissions on certain "mentored" and "managed" accounts. The Amendment also added a four month severance package.

14. The Amendment did not modify or remove Holdridge's entitlement to bonuses under Section 2.5 of the Agreement.

15. Over the next year, Ryco paid Holdridge pursuant to the Agreement and Amendment (the Agreement and Amendment are collectively referred to as the "Employment Contract").

### C. TRICORBRAUN ACQUIRES RYCO AND AFFIRMS THE EMPLOYMENT CONTRACT

16. In June 2007, TricorBraun purchased Ryco[3] and retained Holdridge as an employee. TricorBraun requested that Holdridge sign a new agreement to replace the

---

[3] Kranson Industries, Inc. ("Kranson") purchased Ryco. Kranson changed its name to TricorBraun, Inc. on November 18, 2010.

Employment Contract. Holdridge declined. In response, TricorBraun represented to Holdridge that the Employment Contract would continue to control the relationship between Holdridge and TricorBraun.

17. Around the same time, TricorBraun changed his commission structure without following the requirements of the Employment Contract.

18. At the end of 2007, Holdridge was not provided the financials for TricorBraun or the Dallas District Office. Holdridge was paid commissions, but was not informed whether TricorBraun's accountants had made the required determination and allocation for his bonus under the Agreement's Section 2.5.

19. From 2007 to 2012, Holdridge was unaware that he was not being paid properly pursuant to the Employment Contract. Holdridge performed well in his job, and TricorBraun recognized his efforts by promoting him twice: first to Regional Sales Manager in December 2007, and later to Vice President of Corporate Business Development in June 2010. After his promotion to Vice President of Corporate Business Development, Holdridge inquired of his compensation package in writing on three occasions.

20. When TricorBraun finally did respond, it referred Holdridge to the Employment Contract. For example, in April 2010, Holdridge TricorBraun's Vice President of Corporate Services provided Holdridge the Employment Contract and stated that the Employment Contract controlled. Holdridge believed that TricorBraun was compensating him in accordance with the Employment Contract.

21. In March 2012, TricorBraun asked Holdridge to accept a demotion and move to Tennessee. Holdridge declined reassignment and relocation. In July 2012, his employment was terminated.

22. Upon information and belief, TricorBraun's accountants have still not made the required determinations and allocations for Holdridge's bonuses under the Agreement's Section 2.5. Certainly, that information has not been communicated to Holdridge.

### D. TRICORBRAUN SEEKS TO ENFORCE RESTRICTIVE PROVISIONS OF THE EMPLOYMENT CONTRACT

23. After his termination, Holdridge accepted employment with a packaging company based in Nebraska. Holdridge works from his home in Lewisville when not travelling for work. In September 2012, TricorBraun sent a demand letter threatening to sue Holdridge under the Employment Contract's Restrictive Provisions (the "Demand Letter"), and ordered him to immediately cease and desist any activities that may be in violation of the Restrictive Provisions. TricorBraun attached a copy of Holdridge's Employment Contract to the Demand Letter. Despite having breached its obligation to pay Holdridge under the Employment Contract, TricorBraun now seeks to enforce the Restrictive Provisions. After receiving the Demand Letter, Holdridge first discovered that TricorBraun substantially underpaid him in an amount that totals hundreds of thousands and likely millions of dollars.

### IV. CAUSES OF ACTION

24. The foregoing paragraphs are incorporated by reference to each cause of action as if fully set forth therein.

**Count 1.** BREACH OF CONTRACT

25. The Employment Contract is a valid and enforceable contract. Holdridge fulfilled his obligations under the Employment Contract. TricorBraun breached, and continues to breach, the Employment Contract by failing to compensate Holdridge pursuant to the Employment Contract.

26. TricorBraun's breaches proximately caused harm to Holdridge, including

damages in an amount exceeding the jurisdictional minimum of this Court, plus pre-and post-judgment interest.

27. As a result of TricorBraun's breaches, Holdridge was required to retain the undersigned to enforce Holdridge's rights. Thus, for the reasons described herein, and in Count 6 below, Holdridge is entitled to recover reasonable attorneys' fees and legal expenses in connection with the prosecution of this matter through trial and appeal, if any.

**Count 2.** PROMISSORY AND EQUITABLE ESTOPPEL

28. Principles of estoppel should prevent TricorBraun from making promises to Holdridge regarding his compensation, reaffirming to Holdridge on multiple occasions that the Employment Contract governed his employment and compensation, and demanding compliance with the Restrictive Provisions in the Employment Contract, but failing to pay Holdridge as required by the Employment Contract.

50. As a result of Holdridge's reliance upon TricorBraun's promises and representations, Holdridge was injured and seeks relief from the Court.

**Count 3.** QUANTUM MERUIT

29. Holdridge performed valuable services for TricorBraun. TricorBraun accepted Holdridge's valuable services, for which TricorBraun had reasonable notice that Holdridge expected compensation. Principles of equity require payment for Holdridge's services.

**Count 4.** MONEY HAD AND RECEIVED

30. As described above, TricorBraun holds money that in equity and good conscience belongs to Holdridge. Holdridge seeks this Court's relief for payment of the money that rightfully belongs to Holdridge.

**Count 5.** UNJUST ENRICHMENT, RESTITUTION, AND ACCOUNTING

31. TricorBraun unjustly retained money owed to Holdridge, to Holdridge's

detriment, and diverted such compensation for TricorBraun's own purposes.

32. Under the Employment Contract and principles of equity, Holdridge is entitled to an accounting of all profits, commissions, earnings, or payments of any kind that relate to accounts, gross profits and pretax earnings of TricorBraun's offices and business that were managed and developed by Holdridge.

**Count 6.** ATTORNEYS' FEES

33. Pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, and § 15.51 of the Texas Business and Commerce Code, Holdridge is entitled to recover reasonable and necessary attorneys' fees incurred in the prosecution of the foregoing claims. Holdridge also seeks all recoverable interest and court costs.

## V. REQUEST FOR EXPEDITED DECLARATORY JUDGMENT

**A.** REQUEST FOR EXPEDITED DECLARATORY JUDGMENT

34. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

35. Pursuant to FED. R. CIV. P. 57 and 28 U.S.C. § 2201, Holdridge seeks expedited declaratory relief regarding the rights and obligations of the parties under the Restrictive Provisions. An expedited hearing is necessary because Holdridge's ability to earn a living is being significantly restricted by Restrictive Provisions. The Restrictive Provisions are governed by Texas law. The Restrictive Provisions are ambiguous, overly broad and unenforceable under Chapter 15 of the Texas Business and Commerce Code.

36. Indeed, the Restrictive Provisions include restrictions (*e.g.*, time, geographical area, and scope of activity to be restrained) that are unreasonable and unrelated to protection of TricorBraun's goodwill or business interests. For example, (1) preventing Holdridge from working in the packaging industry for two years is improper and excessive; (2) the 200 mile

radius is far too large a geographic area; and (3) the prohibition against contacting or soliciting customers is ambiguous and fails to identify with specificity the customers that are not to be contacted.

37. Holdridge needs expedited relief to determine what companies he may or may not work for, and what clients he can or cannot contact. The Restrictive Provisions of the Agreement were much narrower when they only applied to Ryco's competitors and clients. TricorBraun is a much larger company than Ryco. If the Restrictive Provisions are applied simply by substituting TricorBraun, the Restrictive Provisions' scope would greatly exceed what was contemplated by the parties when they signed the Agreement, and what is reasonably necessary to protect TricorBraun's legitimate business interests. Thus, TricorBraun seeks the benefits of the Restrictive Provisions, without paying Holdridge the compensation required under the Employment Contract.

38. Holdridge seeks a declaratory judgment that:

    a. The Agreement's Sections 4.1, 4.2, and 4.3 are each void and unenforceable; or

    b. Alternatively, that the Restrictive Provisions are enforceable only after Sections 4.1, 4.2, and/or 4.3 are reformed as necessary to protect TricorBraun's legitimate business interests.

**B. THE COURT SHOULD GRANT DECLARATORY RELIEF.**

39. This is a justiciable controversy. TricorBraun demands compliance with factually and legally overbroad Restrictive Provisions. TricorBraun is using the threat of suit to achieve a result that TricorBraun would not receive in Court. The Court should exercise its discretion to declare the Restrictive Covenants unenforceable, and do so quickly because each day that passes

limits the Court's ability to grant effective relief.

40. Holdridge has complied with the Restrictive Provisions based on his understanding of their restrictions. Holdridge requests a "speedy hearing" because delay will seriously prejudice Holdridge by restraining his ability to work in his industry. The issues before the Court are narrow.

41. Rule 57 embodies the strong public policy favoring early resolution of declaratory judgment actions. Holdridge respectfully requests a hearing at the earliest possible setting that is reasonable for the Court and TricorBraun. Holdridge respectfully requests the Court set an expedited evidentiary hearing on the soonest possible hearing date after Defendant's answer deadline, and, to the extent necessary, for an expedited motion and briefing schedule solely on Plaintiff's request for declaratory relief, in advance of issuance of a Scheduling Order under Federal Rule 16, F.R.C. Moreover, if deemed advisable, Plaintiff seeks a scheduling conference under Federal Rule 16(a)(1), to address management of these issues.

42.

## VI. SATISFACTION OF CONDITIONS PRECEDENT

43. Holdridge alleges that all conditions precedent to the bringing of the foregoing claims were performed or occurred.

## VII. JURY DEMAND

44. Holdridge demands a jury and tenders the appropriate fee.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brent Holdridge respectfully requests:

a. That the Court order a speedy hearing on Plaintiff's request for declaratory relief described above;

b. That the Court award the declaratory relief described above;

    c. That the Court award Holdridge all damages caused by TricorBraun's wrongful conduct, including economic damages, exemplary damages, attorneys' fees, and taxable costs.

    d. That Plaintiff recover pre-judgment and post-judgment interest in the highest amounts permitted by law.

    e. That Plaintiff recover all other relief that justice requires.

Respectfully submitted,

**GRUBER HURST JOHANSEN HAIL SHANK, LLP**

By: <u>s/ Mark A. Shank</u>
    Mark A. Shank
      Texas Bar No.  18090800
      mshank@ghjhlaw.com
    David F. Wishnew
      Texas Bar No.  24052039
      dwishnew@ghjhlaw.com
    Greg P. McAllister
      Texas Bar No.  24071191
      gmcallister@ghjhlaw.com

1445 Ross Avenue, Suite 2500
Dallas, Texas 75202
Telephone: (214) 855-6800 – phone
Telecopier: (214) 855-6808 – fax

**ATTORNEYS FOR PLAINTIFF**

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Brent Holdridge

## DEFENDANTS
TricorBraun, Inc.

**(b)** County of Residence of First Listed Plaintiff: Dallas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: St. Louis
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mark A. Shank, David F. Wishnew, Greg P. McAllister
Gruber Hurst Johansen Hail Shank, LLP
1445 Ross Avenue, Suite 2500, Dallas, Texas 75202, 214-855-6800

Attorneys *(If Known)*
N/A

RECEIVED MAR 21 2013 CLERK U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

3-13CV1202-L

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff) (For Diversity Cases Only) and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332

Brief description of cause:
Breach of contract for unpaid compensation to Plaintiff, and expedited declaratory action regarding restrictive covet

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE: 03/21/2013
SIGNATURE OF ATTORNEY OF RECORD: /s/ Mark A. Shank

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____